# United States District Court
# District of Massachusetts

MOHAMED AMINE HAMADA,
         Plaintiff,

         v.                                    CIVIL ACTION NO. 2008-11807-RBC

BRIAN GILLEN,
         Superintendent,
         Plymouth County Correctional Facility,
                  Defendant.


# MEMORANDUM AND
# ORDER ON MOTION TO DISMISS (#4)


COLLINGS, U.S.M.J.


## I. INTRODUCTION

Plaintiff Mohamed Amine Hamada ("petitioner" or "Hamada"), petitions

for habeas corpus relief under 28 U.S.C. § 2241. (#1)  Petitioner is currently in

the custody of the Department of Homeland Security Immigration Customs and

Enforcement ("ICE") and is detained pending a removal decision pursuant to

8 U.S.C. § 1226(a) at the Plymouth County Correctional Facility in Plymouth,

Massachusetts.  He challenges the legality of his detention.  The respondent Brian Gillen ("respondent") has moved to dismiss the petition for lack of subject matter jurisdiction.  (#4)  The Court concludes that, despite the petitioner's efforts to cast his challenges as constitutional in nature, the substance of the petition disputes solely the discretionary decision to detain petitioner, and to deny his release on bond.  Because the Court is precluded from reviewing such discretionary decisions under 8 U.S.C. § 1226(e), the Court shall grant the motion to dismiss.

## II.  BACKGROUND

The facts as recited here are gleaned from the allegations of the petition. Hamada, who was born on December 24, 1986, is a native and citizen of Algeria.  (#1 ¶ 7)  In 1990, Hamada entered the United States with his family and has continuously resided in the United States since that time. (#1 ¶ 7) His immigration status in 1990 at the time of entry into the United States is unknown.

On June 13, 1995, Hamada's father filed an I-589 Application for Asylum to establish permanent residence for himself and his immediate family.  (#1 ¶ 8)  On about August 14, 1995, the Immigration Service issued an Order to

Show Cause, and the petitioner and his family refiled the asylum case in the Boston Immigration Court.  (#1 ¶ 9)  On July 7, 1997, the application for asylum was denied, and Hamada appealed to the Board of Immigration Appeals ("BIA").  On March 19, 2002, the BIA administratively closed the case so that removal proceedings could be initiated.  (#1 ¶ 9; Exh.1, Order of the BIA)  No further action appears to have been taken at that time.

On June 20, 2008, Hamada was arrested in Boston for assault and battery and resisting arrest.  (#1 ¶ 11)  He was released on $400.00 cash bail, and the state criminal charges remain pending in Boston Municipal Court.[1]  (#1 ¶ 11). After Hamada was released from state custody, ICE placed Hamada in federal custody. Hamada is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts.  Sometime in July 2008, Hamada moved to reinstate proceedings.  (#1 ¶ 9)  On August 19, 2008, the BIA granted the motion and remanded for further proceedings, inasmuch as the evidence had become stale since the immigration judge's decision of July 7, 1997.  (#1 ¶ 9 & Exh. 2)

---

[1]

In fact, on the Court's inquiry to the Boston Municipal Court, the state criminal charges are no longer pending, as they were dismissed without prejudice on January 22, 2009; this is verified by a certified copy of the docket sheet which the Court has obtained from the Boston Municipal Court and filed in the instant case this date.

On July 11, 2008, Hamada moved for bond redetermination to contest his custody. (#1 ¶ 12 & Exh. 3)   Hamada's motion was denied by an immigration judge on July 30, 2008, who determined, citing Hamada's past criminal record and the recent charges of assault, battery and resisting arrest, that Hamada posed a danger to the community.  (#1, Exh. 3)  On August 12, 2008, Hamada sought reconsideration of that decision, and the immigration judge again denied the motion.  (#1 ¶ 12 & Exh. 4)  On October 16, 2008, the BIA granted Hamada's motion to consolidate the two decisions, and affirmed the immigration judge's decision to deny bond, and to continue to detain Hamada.  (*See* #1 ¶ 13 & Exh. 5)

On October 28, 2008, Hamada filed this habeas petition pursuant to 28 U.S.C. § 2241. Hamada seeks review of the BIA's decision to detain him; he specifically seeks release from custody and determination of a reasonable bond. He asserts also that his continued detention violates due process inasmuch as it impedes him from defending against the state criminal charges, and from being able to proceed with the proper adjudication of his asylum application. (#1 ¶18) The respondent now moves to dismiss the petition for lack of subject matter jurisdiction.

4

### III.  ANALYSIS

#### A.  Standard of Review

In deciding a motion to dismiss for lack of subject matter jurisdiction, a court must "give weight to the well-pleaded factual averments in the operative pleading . . . and indulge every reasonable inference in the pleader's favor." *Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 8 (1st Cir. 2007).  Dismissal "is appropriate only when the facts . . ., taken as true, do not justify the exercise of subject matter jurisdiction." *Muniz-Rivera v. United States*, 326 F.3d 8, 11 (1st Cir.), *cert. denied*, 540 U.S. 873 (2003).  The party asserting subject matter jurisdiction has the burden of establishing its existence.  *See McBee v. Delica Co., Ltd.*, 417 F.3d 107, 122 (1st Cir. 2005).

#### B.  Jurisdiction under INA Statutory Framework

Hamada is currently being detained pursuant to 8 U.S.C. § 1226(a), which provides:

> **Apprehension and detention of aliens**
> (a) Arrest, detention, and release
>     On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this

section and pending such decision, the Attorney
General–
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on–
        (A) bond of at least $1,500 with security
approved by, and containing conditions prescribed by,
the Attorney General[.]

The respondent argues that this Court lacks subject matter jurisdiction to review

the IJ's decision to detain Hamada under 8 U.S.C. § 1226(e), which provides:

(e) Judicial review
    The Attorney General's discretionary judgment
regarding the application of this section shall not be
subject to review.  No court may set aside any action or
decision by the Attorney General under this section
regarding the detention or release of any alien or the
grant, revocation, or denial of bond or parole.

In his petition, Hamada claims that, in determining whether to detain him, the

IJ and the BIA "abused their discretion in minimizing significant equitable

factors in Petitioner's favor . . . ." (#1 at 9).  The Court concludes that Hamada,

with such allegations,[2] challenges a quintessential discretionary decision.  *Cf.*

*Cruz-Camey v. Gonzales*, 504 F.3d 28, 29 (1st Cir. 2007) (rejecting effort to

---

[2]

    Hamada also asserts that the Court should vacate the detention decision "[b]ecause of the
positive countervailing factors and equities in Petitioner's case outweigh [sic] the negative factors." (#1
at 11)

recast challenge to BIA's discretionary judgment as due process claim because petitioner "merely challeng[ed] the manner in which the BIA balanced the various positive and negative factors"); *Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003) (habeas petitioner "may not challenge the agency's decision to exercise or not exercise its discretion to grant relief"). The Court therefore agrees with the respondent that the provision above precludes this Court from reviewing the decision to detain Hamada and to deny bond.[3] *Saint Fort*, 329 F.3d at 200 (noting that the Supreme Court has "read the jurisdiction-limiting provision in § 1226(e) as applying only to review of the Attorney General's discretionary judgment") (citing *Demore v. Kim*, 538 U.S. 510, 516-517 (2003)); *see also Loa-Herrera v. Trominski*, 231 F.3d 984, 991-992 (5th Cir. 2000).

Still, "district courts retain jurisdiction over challenges to the legality of detention in the immigration context," *Aguilar*, 510 F.3d at 11 (citing *Hernández v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005)), and "[t]his carve-out seemingly encompasses constitutional challenges regarding the availability of bail, *id.* (citing *Demore,* 538 U.S. at 516); *see also Saint Fort*, 329 F.3d at 203) ("At a minimum, habeas review encompasses constitutional challenges that are at least

---

[3] For this reason, the Court does not consider the alternative argument advanced by the respondent, *viz.*, that review is also precluded under 8 U.S.C. § 1252(a)(2)(B)(ii).

colorable."). Hamada thus contends that the Court can review the legality of his detention because he alleges certain constitutional violations in his petition. (#7, Plaintiff/Petitioner Mohamed Amine Hamada's Response to Defendants' Motion to Dismiss, at 5)   Specifically, Hamada alleges that his detention violated his due process rights[4] because he is prevented from "proceed[ing] with the proper adjudication of his I-589 Application for Asylum." (#1 ¶ 18)   The Court rejects this contention out of hand because "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531.   By Hamada's lights, *any* detention during removal proceedings would offend the due process clause.

Hamada also suggests a due process violation because, he contends, the denial of his release on bond has prevented him from appearing before the state court on his assault and battery charge.   Specifically, he alleges that

> Counsel for the Petitioner criminal case [sic] has made numerous requests for Petitioner presence [sic] in the Boston Municipal Court to defend the charges that are pending in the Boston Municipal Court Case no. 0801CR4841 however the Defendants have ignored the requests of the Massachusetts Courts and Petitioner counsel to produce the Petitioner at the Boston Municipal Court, which has jeopardizes [sic] Petitioner

---

[4] Hamada also invokes the equal protection clause, but never elaborates on his equal protection claim.

rights to defend the case at the Boston Municipal
Court.

#1 ¶ 14.

The issue strikes the Court as an administrative matter (and one which

Hamada did not raise before the IJ or BIA in his bond determination hearings),

not as a constitutional one. In any event, Hamada has cited to no case law to

support this contention. If that were not enough, on the Court's inquiry to the

Boston Municipal Court, it appears that the pending state criminal charges were

dismissed without prejudice as of January 22, 2009.[5] The Court thus concludes

that Hamada has failed to allege a colorable constitutional claim.

Finally, Hamada off-handedly posits (*see* #7 at 6) that the Court may

review the agency's discretionary detention decision because the INS had issued

an Order to Show Cause on August 14, 1995, before Congress's enactment of

the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

(IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009, 3546 (codified as amended in

scattered sections of 5, 8, 18, 28, 42, & 48 U.S.C.). He contends therefore that

---

[5]

    Ordinarily, in ruling on a motion to dismiss, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company*, 267 F.3d 30, 33-4 (1st Cir. 2001). There is a "narrow exception . . . for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (internal quotation marks and citation omitted). As stated, *supra,* the Court's statement is based on a certified copy of the state court record.

section 1226(e) does not apply to his case because his removal proceedings had already commenced when the statutes were amended and enacted in 1996.  In addition to contending that IIRIRA's judicial review provisions are inapplicable, Hamada concomitantly contends that the immigration judge incorrectly applied the factors set out in 8 C.F.R. § 1003.19(h)(3) in determining whether detention was warranted.  (#7 at 6)  Under that regulation, an alien bears the burden of proof in establishing, by clear and convincing evidence, that his release would not pose a danger to other persons.  Hamada argues that previous BIA release standards, under which it was presumed that an alien would not be detained unless he posed a threat to national security or posed a flight risk, should apply. (*See* # 7 at 6)  The Court will not enter into this thicket for two reasons. First, Hamada has not met his burden to establish that he is not subject to the new enactments.  Alternatively, the Court concludes that Hamada could and should have administratively exhausted these arguments before the agency.

As noted, Hamada, as the party asserting subject matter jurisdiction, has the burden of establishing it.  Accordingly, Hamada also bears the burden "to show that his case falls under the old regime rather than the new." *Costa v.*

*Immigration and Naturalization Serv.*, 233 F.3d 31, 33 (1st Cir. 2000). Without doubt, the "shifting series of congressional directives makes timing very important," *id.*, and the date on which an alien is placed in deportation proceedings determines which statutory scheme governs in a given immigration case. *See id.* ("IIRIRA provides that 'an alien who is in exclusion or deportation proceedings as of the [statute's] effective date' (April 1, 1997) is not subject to the new rules. IIRIRA § 309(c)(1)"); *see also* 8 Charles Gordon, et al., *Immigration Law and Procedure*, § 104.04[3][a] (rev. ed. 2008) (the effect of the legislative changes was to create three time frames for judicial review, depending on when an alien was placed in deportation proceedings and whether an administratively final deportation order had entered). Here Hamada points to the bare allegation that he was issued an Order to Show Cause in 1995, and placed in deportation proceedings at that time. The record, however, shows that the BIA administratively closed Hamada's case on March 19, 2002, pursuant to IIRIRA § 309(c)(3), and nothing in the record suggests that Hamada objected to the administrative closure. IIRIRA § 309(c)(3) (codified at 8 U.S.C. § 1101 note) provides as follows:

(3) ATTORNEY GENERAL OPTION TO TERMINATE
AND REINITIATE PROCEEDINGS.-In the case
described in paragraph (1) [deportation or exclusion
cases pending on the IIRIRA's enactment date], the
Attorney General may elect to terminate proceedings in
which there has not been a final administrative
decision and to reinitiate proceedings under [the
IIRIRA]. Any determination in the terminated
proceeding shall not be binding in the reinitiated
proceeding.

Hamada makes no attempt to explain the effect of the administrative closing in

his case. Specifically, he offers no developed argument and cites to no legal

authority to explain how his case continues to be subject to the pre-IIRIRA law,

given that his deportation case was administratively closed in 2002, that

Hamada did not object to the administrative closure and that he himself moved

to reinstate the proceedings in August 2008.[6]  Without more, the Court

---

[6]

This process of terminating cases instituted prior to the effective date of the IIRIRA and then reinstating the proceedings under the new statutory scheme as "removal proceedings" is referred to as "repapering." *See, e.g.*, *Alcaraz v. INS*, 384 F.3d 1150, 1152-1154 (9th Cir. 2004). Parenthetically, repapering generally inures to the benefit of an alien who would have been unable to establish the residency requirement for suspension of deportation under pre-IIRIRA law because IIRIRA § 309(c)(5) retroactively changed the date that the clock stopped for calculating whether an alien met the seven-year residency requirement. Repapering "authorizes the Attorney General to provide such aliens an opportunity to apply for a new form of relief enacted in IIRIRA, Cancellation of Removal." *Alcaraz,* 384 F.3d at 1152-1153. This is the apparent rationale behind the administrative closure of Hamada's parents' case; Hamada's case was closed at the same time for "administrative convenience." (*See* #1 Exh. 1 at 2-3, Order of the BIA dated March 19, 2002)

concludes that section 1226(e) governs here.[7]

More important, the record does not establish that Hamada presented any of these arguments to the IJ or the BIA, and the Court concludes alternatively that Hamada must administratively exhaust his remedies on these points. *See Campbell v. Chadbourne*, 505 F. Supp.2d 191, 197 (D. Mass. 2007) (noting that although Congress has not clearly required exhaustion by statute, "'sound judicial discretion governs'" in determining whether to require exhaustion) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds)); *see also Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004). In exercising that discretion, the Court emphasizes that Hamada, with little elaboration, has asked the Court in the first instance to interpret the INA, its implementing regulations, and the effect of the administrative closing on Hamada's case. However, the Court is mindful that "the Agency has particular expertise in interpreting the INA." *O'Connell*, 355

---

[7]

Hamada was detained in 2008. Hamada similarly does not explain why the later enactments ought not apply to his later detention. The Court's own research suggests that the detention and custody provisions of the IIRIRA, at least to the extent that they deal with mandatory detention, were intended to have prospective effect, except for a period of transitional rules (not applicable to Hamada) that expired in October 1998. *See, e.g., Velasquez v. Reno*, 37 F. Supp.2d 663, 671 (D. N.J. 1999) (noting that "Congress has explicitly set forth the effective date of the new detention provisions of the IIRIRA," and that Congress intended custody rules to have prospective effect) (citing Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586). Thus, it is entirely plausible that the provisions respecting discretionary detention would also apply prospectively and that Hamada would be subject to the detention provisions no matter when his deportation proceedings commenced.

F.3d at 1017 (citing *McCarthy*, 503 U.S. at 145 ("Exhaustion concerns apply with particular force . . . when the agency proceedings in question allow the agency to apply its special expertise."). Thus, the agency is in the best position to determine the effect of administratively closing Hamada's case, and ought to have the first opportunity to consider any argument that the detention provisions contained in the IIRIRA or that its current regulations are inapplicable to Hamada.

## IV. CONCLUSION AND ORDER

For the reasons stated, it is ORDERED that Respondent's Motion To Dismiss For Lack Of Subject Matter Jurisdiction (#4) be, and the same hereby is, ALLOWED.  Judgment shall enter accordingly.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

Date: May 21, 2009.

14